STATE *ex rel.* GARY ERLEWINE

*v.*

THE HONORABLE JAMES LEE THOMPSON,
*Judge, etc. et al.*

(No. 13237)

Submitted April 24, 1973.          Decided June 5, 1973.

Dissenting Opinion July 29, 1974.

*Frank M. Armada,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *E. Leslie Hoffman, III,* Assistant Attorney General, for respondents.

CAPLAN, JUDGE:

In this original proceeding in prohibition the petitioner Gary Erlewine seeks a writ to prohibit James Lee Thompson, Judge of the Circuit Court of Putnam County and Clarence L. Watt, Prosecuting Attorney of said county, from further prosecuting him on a certain indictment returned against him by the grand jury of the Circuit Court of Putnam County. The indictment was returned during the July Term, 1970 and charged the petitioner with the crime of sodomy. Upon the petition, filed by the petitioner, the Answer and Return of the

respondents, together with all exhibits and upon briefs and arguments filed and made by counsel for the respective parties this case was submitted for decision.

It is the contention of the petitioner that three terms of the Circuit Court of Putnam County have passed after the return of the indictment during which terms the defendant was not brought to trial; that nothing was done by the petitioner during those terms which would have prevented the state from trying him; and that under the commonly referred to three-term rule as set out in Code, 1931, 62-3-21, as amended, the Circuit Court of Putnam County has lost jurisdiction to further prosecute this case.

By statute there are annually three terms of the Circuit Court of Putnam County. The court convenes on the first Monday of March, the second Monday of July and on the first Monday of November. The record reveals that the indictment was returned during the July Term, 1970; at the November Term, 1970 no trial was afforded the petitioner; at the March Term, 1971 the case was continued on the motion of the defendant; there was no trial of the defendant and no explanation therefor during the July Term, 1971 and November Term, 1971; and that at the March Term, 1972 the case was continued on the motion of the defendant. At the July Term, 1972 the case was called for trial and the defendant filed a Plea in Bar of Prosecution and Motion to Discharge Defendant from Prosecution. On August 3, 1972 a hearing was held on said plea in bar. Upon denial thereof, the court set the trial for August 14, 1972. Thereafter this petition for a writ of prohibition was filed.

It is clear from the record and it has been readily admitted by the respondents that the July and November terms of 1971 during which no trial was afforded the defendant, and for which there was no explanation, were unexcused and counted as two terms under the three-term rule. The November Term, 1970, during which no trial was held is the only term in question in this proceeding.

It is essential, therefore, that we consider fully the events that took place during that term.

The record reveals that the petitioner at the time of the alleged offense was a minor under eighteen years of age. By reason thereof, in accordance with the provisions of Code, 1931, 49-5-3, as amended, and upon motion of counsel for the defendant, the case was transferred to the Juvenile Court of Putnam County. An order was entered on September 23, 1970 effecting such transfer. By an order of the juvenile court dated December 9, 1970 the said court stated that pursuant to a hearing held on September 23, 1970 the case should be referred to the circuit court for further disposition and did thereby order that it be remanded to said circuit court.

It is the contention of the petitioner that he not having been afforded a trial during the November Term, 1970 and the state not having been excused from holding such trial by any of the provisions of Code, 1931, 62-3-21, as amended, he should be forever discharged from further prosecution for the charges contained in the July, 1970 indictment. He asserts that this supplies the third unexcused term during which he was not tried, the others admittedly being the July and November terms of 1971.

It is the position of the respondents that the defendant's case having been transferred from the Circuit Court to the Juvenile Court of Putnam County on September 23, 1970 and not having been remanded to the circuit court until December 9, 1970, well within the November term, the defendant was not within the jurisdiction of the circuit court at the beginning of said November term. Basically, say the respondents, the circuit court did not have jurisdiction of the defendant during the November Term, 1970. They assert that the state was, therefore, excused under the provision of Code, 1931, 62-3-21, as amended, and cases decided by this court for not bringing the defendant to trial at that term of court.

Where pertinent, Code, 1931, 62-3-21, as amended, provides: "Every person charged by presentment or

indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever disoharged from prosecution for the offense, if there be three regular terms of such court, after the * * * indictment is found against him, without a trial, unless the failure to try him was caused by * * *" (reasons not applicable here).

In order for a defendant to be entitled to a discharge from custody for failure of the state to prosecute, as provided in this statute, it is contemplated that he, during the three terms relied upon, must have been subject to the jurisdiction of the court wherein he was to be tried. In the words of the statute, he must have been "remanded to a court of competent jurisdiction for trial," and be without fault in delaying the trial before the state can be chargeable with failure to try. If the defendant is outside of the jurisdiction at the beginning of any term upon which he relies, such term is excused and cannot be counted as one of the three terms in which the state failed to prosecute. *State ex rel. Smith v. DeBerry,* 146 W.Va. 534, 120 S.E.2d 504; *State v. Gregory,* 143 W.Va. 878, 105 S.E.2d 532.

In the instant case the petitioner was not in a court of competent jurisdiction for trial when the November Term, 1970, began. As the record clearly and undisputedly reveals, he was, at that time, within and subject to the jurisdiction of the juvenile court, a court which was totally without jurisdiction or legal authority to try him for the offense with which he was charged in the indictment. As herein noted, he was transferred to the juvenile court by an order of the circuit court dated September 23, 1970. He was not transferred back to the circuit court, as revealed by a proper order of the juvenile court, until December 9, 1970, a considerable time after the beginning of the November term. During the time that the defendant was within the jurisdiction of the juvenile court, the circuit court could not try him on the indictment.

We are aware of the language of the order of December 9, 1970, which indicates that a hearing on the defendant's transfer back to the circuit court was held on September 23, 1970. While it appears that the judge of the juvenile court should have acted prior to the November term, we cannot say that his action in not deciding the case until December 9, 1970 was unreasonable. A court of record speaks only through its orders and the order in the record of this case shows that the defendant was not available for trial on the indictment when the term in question began. *State ex rel. Mynes v. Kessel,* 152 W.Va. 37, 158 S.E.2d 896. *Powers v. Trent,* 129 W.Va. 427, 40 S.E.2d 837; *State ex rel. Bika v. Ashworth,* 128 W.Va. 1, 35 S.E.2d 351.

For the reasons set forth herein the writ prayed for is denied.

*Writ denied.*

HADEN, JUSTICE, dissenting:

I respectfully dissent. In my opinion the relator has clearly demonstrated that he was entitled to be forever discharged from prosecution of the criminal charge against him because his case was not called for trial promptly, in violation of the constitutional and statutory provisions securing to him the right to a speedy trial or to a trial without unreasonable delay.

Excluding the term in which he was indicted and remanded to a court of competent jurisdiction for trial, three unexcused terms of court occurred and concluded before the State called Gary Erlewine's case for trial. The majority opinion acknowledges that in two of these terms —the July 1971 and November 1971 terms, the record was silent and the State interposed no legal excuse for its failure to bring the accused to trial. The term of court, the passage of which provides the focus of controversy in this case, is the one occurring at the November term of 1970. It also passed without trial for the accused and without the entry of a court order excusing trial.

As a reason for not bringing the relator to trial in the November 1970 term, the State directs our attention to the fact that after being held for trial on the criminal charge, Erlewine, then under eighteen years of age, was transferred to the jurisdiction of the Juvenile Court of Putnam County pursuant to the mandatory requirements of *Code* 1931, 49-5-3, as amended. The transfer occurred at the instance of the accused; it was accomplished by order entered during the July term 1970 on September 23, 1970, by the circuit court judge who, as well, presides in the capacity of judge of the juvenile court. On the date of transfer, the juvenile court conducted a hearing to determine whether Erlewine should be tried as an adult for the crime charged or whether he should be retained under the juvenile court's jurisdiction for consideration as a delinquent. The juvenile court, also on the same date, immediately determined that the relator should be tried as an adult and, accordingly, remanded him to the circuit court for trial of the crime. As sometimes happens, however, the order reflecting the disposition occurring on September 23, 1970, was not entered until December 9, 1970, a date well within the succeeding November 1970 term. That term concluded with no further proceedings being had in the relator's case.

On these facts, and with reference to the language of the so-called "Three Term Statute," *Code* 1931, 62-3-21, as amended, the majority noted that an accused seeking to be protected by the statute "must have been 'remanded to a court of competent jurisdiction for trial, . . . .'" Departing from the statute, it also said that the accused further must "*be without fault in delaying the trial . . . .*" (Emphasis supplied). Following that, the majority held that if a defendant is outside the jurisdiction at the beginning of any term upon which he relies, such term is excused and cannot be counted as one of the three terms in which the State failed to prosecute. In support of this holding the Court relied upon the cases of *State ex rel. Smith & Brooks v. DeBerry,* 146 W.Va. 534, 120 S.E.2d 504 (1961); *State v. Gregory,* 143 W.Va. 878, 105 S.E.2d

532 (1958). Additionally, while acknowledging and disapproving the delay of the trial judge in effecting the retransfer of Erlewine's case to the circuit court for trial, the majority could not find that the delay "was unreasonable."

Although paying homage to the existence of the Three Term Statute, the decision of the majority absolutely ignores the constitutional right to a speedy trial secured to an accused by both the Federal and State Constitutions, the plain requirements of *Code* 1931, 62-3-21, as amended, and this Court's previous interpretations of the statute. By this holding, the Court also judicially legislated an additional requirement into the Three Term Statute. By its application of the law to the facts of this case, it also does violence to previous decisions of this Court.

For reasons which, I hope, will become apparent, a brief allusion to the source documents of our laws should be appended to the disposition of this case.

West Virginia Constitution, Article III, Section 14 provides, *inter alia*: "Trials of crimes, . . ., shall be . . . without unreasonable delay . . . ." The Sixth Amendment to the United States Constitution provides, *inter alia*: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . . ." As recently construed by the United States Supreme Court, it has been decided that the Sixth Amendment guaranty of an accused's right to a speedy trial protects a *fundamental* right and is made obligatory on the states by the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967); *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); Annot., 21 L. Ed. 2d 905, 908 § 4 (1969).

At other times, this Court has recognized the existence, purpose, and policy of the constitutional right:

> "The right to a speedy trial is intended to avoid oppression and prevent delay by imposing on the courts and on the prosecution an obligation to proceed with reasonable dispatch. It has been

said that the basic policy underlying the constitutional guaranty and the statutes enacted to implement it is to protect the accused from having criminal charges pending against him an undue length of time." *State ex rel. Farley v. Kramer*, 153 W.Va. 159, 170-171, 169 S.E.2d 106, 113-114 (1969), quoting from 21 AM. JUR. 2d *Criminal Law* § 242 (1965).

In that the constitutional language securing an accused the right to a trial "without unreasonable delay" is indeterminate and unspecific, the Legislature also has specified the scope and the limitation of the right with the adoption of *Code* 1931, 62-3-1, as amended, and *Code* 1931, 62-3-21, as amended. In this case we are concerned only with the latter section specifying that an accused shall be tried within three regular terms of court after a presentment has been made or indictment found against him, subsequent to his having been remanded to a court of competent jurisdiction for trial, as applicable to the facts of this case. In pertinent part, it provides as follows:

"Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused [1] by his insanity; or [2] by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or [3] by a continuance granted on the motion of the accused; or [4] by reason of his escaping from jail, or failing to appear according to his recognizance, [5] or of the inability of the jury to agree in their verdict; . . . ." *Id.* (Emphasis supplied by delineation).

In construing this statute, the Court said in *Smith & Brooks, supra,* at page 538:

"It is the legislative adoption or declaration of what, ordinarily, at least, constitutes a speedy trial within the meaning of Article III, Section 14

of the State Constitution, and of the Sixth Amendment to the Federal Constitution, and, of course, for the purpose intended should be liberally construed."

Implicit in this statement is that the court shall liberally construe the statute for the benefit of an accused.

As a preliminary matter to its decision the majority noted that the exceptions to the statute excusing the State for its failure to prosecute Erlewine within three terms after the term in which he was charged, were not applicable to this case. Obviously then, neither the majority nor the State excused the State's delay by recourse to the instances approved by the Legislature.

The avenue of the majority opinion was an implicit holding that the statutory right to be tried within three terms did not attach. This was the holding of the only two cases cited by the majority in support of its decision. Those cases held that the statute did not protect an accused while he was outside the prosecuting court's jurisdiction, where the accused had not been held, by appearance and plea, for trial. That rule would have been properly applicable to this case if Erlewine had not been once "remanded to a court of competent jurisdiction for trial, . . . ." *Code* 1931, 62-3-21, as amended.

Comparatively, in the *Smith & Brooks* case, *supra,* the two accused, although charged in the prosecuting court, had never appeared in that court because they were confined in the jail of another county under other charges and the prosecutor of the confinement county had refused to surrender custody to the charging county. In *Gregory, supra,* the accused, while charged with crime through indictment, also had never appeared in the charging county by reason of his having fled the jurisdiction to avoid prosecution. The rule is otherwise once the court's jurisdiction has attached and the accused remains available for prosecution.

The constitutional guaranty of an accused to a speedy trial or a trial without unreasonable delay becomes

operative when the State obtains jurisdiction of the person of the accused. Its protection is triggered in favor of the accused by the action of the State "holding" the accused to answer a criminal charge. *United States v. Marion,* 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). The Fourth Circuit recently held that the Sixth Amendment right to a speedy trial has no application until the putative defendant in some way becomes an accused. Ordinarily it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of the amendment. *Smith v. Cox,* 474 F.2d 563 (4th Cir. 1973); see also, 4 M.J. *Constitutional Law* § 86, *et seq.* (1974 Cum.Supp.).

Early on, this Court recognized that the constitutional guaranty and statutory specification of the fundamental right become operative only after the court secures jurisdiction. In *State v. Kellison,* 56 W.Va. 690, 47 S.E. 166 (1904), the Court recognized that the mere fact that the records of a court show that more than three terms have elapsed without a trial after the finding of the indictment affords no ground for the discharge of the accused under the *Code* section. The *Kellison* Court held that it must further appear that the defendant has been "held for trial", as well as charged with the crime, for such period without a trial. Syllabus point 1, *id.*

In the case at bar, however, it is patently obvious that the jurisdiction of the Circuit Court of Putnam County attached to Erlewine's person when he appeared to answer the indictment in the July term, 1970. Under federal and State law, I submit the constitutional right and the statutory rights in elaboration thereof became operative the first time the accused was remanded or held to a court of competent jurisdiction for trial. Once attached, the constitutional guaranty contemplates that all means available to the State to meet its requirements shall be utilized. *Smith v. Hooey,* 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969); *Teets v. West Virginia,* 322 F. Supp. 695 (N.D. W.Va. 1971); *State v. Underwood,* 130

W.Va. 166, 43 S.E.2d 61 (1947); *State v. Crawford,* 83 W.Va. 556, 98 S.E. 615 (1919); *Ex parte Chalfant,* 81 W.Va. 93, 93 S.E. 1032 (1917). Further, once the Three Term Statute becomes operative the constitutional burden placed upon the prosecution and the court is ineluctable and continuous; it requires the State to either try or discharge an accused before the conclusion of the third full regular term after being held for trial. *State ex rel. Wren v. Wood,* 156 W.Va. 32, 190 S.E.2d 479 (1972). As recognized in the *Farley* case, *supra,* the duty is upon the prosecution to provide a prompt trial rather than a duty on the accused to demand a speedy trial; the duty in this jurisdiction is clearly upon the State to demonstrate compliance with the Federal and State Constitutions and the legislative specifications of the speedy trial right. *State ex rel. Wren v. Wood, supra; State ex rel. Parsons v. Cuppett,* 155 W.Va. 469, 184 S.E.2d 616 (1971); *State v. Underwood, supra; State v. Crawford, supra; Ex parte Hollandsworth v. Godby,* 93 W.Va. 543, 117 S.E. 369 (1923); *Ex parte Bracey,* 82 W.Va. 69, 95 S.E. 593 (1918); *Ex parte Anderson,* 81 W.Va. 171, 94 S.E. 31 (1917).

The clear and apparent thrust of the previous decisions of this Court, in accord with the plain language of the statute, is that the Three Term Statute is a statute of limitations, expositive of the constitutional right. When the accused has been held for trial, when the time permitted in the statute has "run" without trial, and where the State does not bring itself within the legislative exceptions specified, the accused is entitled to be discharged. This is the general rule.

The only additional exceptions "created" and applied by this Court are those situations where the statute has been treated as suspended in its operation because the trial court to which the accused was held for trial has lost jurisdiction of the person of the accused previously acquired, thus rendering it impossible to try the accused during the allotted time. For example, as recognized in *State v. Loveless,* 142 W.Va. 809, 98 S.E.2d 773 (1957), it is impossible to try an accused where the trial court loses

jurisdiction to an appellate court for its consideration of a writ of error or certified question, the delay occasioned thereby being unavoidable. Applying the same principle, this Court held in *State v. Holland,* 149 W.Va. 731, 143 S.E.2d 148 (1965), when the accused institutes a successful habeas corpus petition in another court, the charging court loses jurisdiction of the person of the accused and the operation of the Three Term Statute during the pendency of the *habeas* proceeding is suspended.

Aside from express waiver, also recognized in *State v. Holland, supra,* or consent freely given to forgo the benefit of the Three Term Rule, *State v. Wiseman,* 141 W.Va. 726, 92 S.E.2d 910 (1956), this Court recognizes only one other "judicial exception" to the Three Term Statute. Where the accused, although available for trial, instigates proceedings in the trial court which force a continuance of the case at a particular term of court, he will not be permitted to take advantage of the delay thus occasioned. The untimely filing of dilatory motions on the last day of the term or so near the end of the term as to make it impossible to dispose of the motions and also try the accused was held to be equivalent to a "forced" continuance, chargeable to the accused. See *State ex rel. Spadafore v. Fox,* 155 W.Va. 674, 186 S.E.2d 833 (1972); *State v. McIntosh,* 82 W.Va. 483, 96 S.E. 79 (1918). But compare, *State ex rel. Parsons v. Cuppett, supra; Ex parte Bracey, supra.* In view of the constitutional protections accorded an accused to secure the fundamental right to a speedy trial, the results of the *Spadafore* and *McIntosh* cases are curious, to say the least, and should not be extended by the implications of the majority decision herein.

Although the majority opinion did not refer to cases applying the judicially-created exceptions to the operation of the Three Term Rule, it opined that the accused was not properly tried because of his "fault in delaying the trial" or because the accused was temporarily outside the jurisdiction of the trial court. This implication is

certainly not warranted by the law of this State. An infant accused of a crime shall, according to *Code* 1931, 49-5-3, as amended, be transferred to a juvenile court for consideration by that court as to whether he should be tried as an adult for a crime or handled civilly as a juvenile delinquent. This transfer is absolutely required by the statute so that the State, as *parens patriae,* can properly protect its juveniles. Once the infancy of an accused is brought to the criminal court's notice, it cannot avoid the initial transfer. See, *State ex rel. Slatton v. Boles,* 147 W.Va. 674, 130 S.E.2d 192 (1963).

On the other hand, it cannot be plausibly asserted, at this late date, that a juvenile so transferred between two courts presided over by the same judge, is thereby placed beyond the reach of the jurisdiction of the charging court so that he cannot be tried promptly, pursuant to the command of *Code* 1931, 62-3-21, as amended. Chief Justice Caplan who speaks for the majority in this case, spoke to this jurisdictional anachronism in the recent case of *Brooks v. Boles,* 151 W.Va. 576, 153 S.E.2d 526 (1967). Rhetorically questioning the trial court's capacity to assert jurisdiction for trial of an accused who was also an infant, the Chief Justice said:

> "[O]ne judge, serving in two capacities, presides over the juvenile and criminal courts * * * . Can Code, 1931, 49-5-3, as amended, be construed to mean that the judge of the intermediate court, having jurisdiction of criminal cases, is required to certify the case to himself as judge of the juvenile court and then back to himself as judge of the intermediate court before this petitioner could be tried for the crime charged? The circumstances of this case require an answer in the negative." *Id.* at 582.

Although the facts in the *Brooks v. Boles* case are somewhat inapposite to the instant appeal, the import of one judge serving in a bifurcated capacity, each of which exercises "exclusive" jurisdiction over the person of an accused infant, was recognized. The import is obvious. It is that the one judge, wearing two hats, had

absolute control of the proceedings; the accused always remained subject to the jurisdiction of one of his courts, available, and within reach of the charging court.

Once the peculiar jurisdictional fiction involving transfer of an infant accused is laid aside, the delay occasioned by the court's failure to enter the certification order is given the perspective of its actual context. It then becomes an ordinary non-excused delay of the type condemned by this Court on several occasions. The accused was discharged from prosecution on delays, similar in nature to the dereliction found in this case, in the following instances: *State ex rel. Wren v. Wood, supra; State ex rel. Parsons v. Cuppett, supra,* (unreasonable delay in failing to pass on preliminary motions) ; *State v. Underwood, supra,* (unreasonable delay in failure to enter order continuing case on motion of the accused) ; and *Smith v. Hooey, supra; Ex parte Hollandsworth v. Godby, supra; Ex parte Chalfant, supra,* (unreasonable delay in failing to try an accused because he was imprisoned on other charges). See also, 21 AM. JUR. 2d *Criminal Law* § 242 (1956) and examples contained therein.

The other implication arising from the "transfer" occurrence in this case is that an accused who is an infant may be forced to surrender his constitutional right to trial without unreasonable delay, by reason of his infancy. An accused does not surrender one constitutional right in the assertion of another such right. *Simmons v. United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) ; *United States v. Jackson,* 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968).

Finally, the majority concluded that the delay of the Judge of the Juvenile Court of Putnam County in failing to retransfer Erlewine's case "was [not] unreasonable" under the circumstances. The foregoing discussion makes it clear that reasonableness in delay, or, more properly, the excuses for delay are contained within the exceptions of the statute. But, by speaking generally, the majority also implies that the trial court had normal

discretion in determining whether the accused should be retransferred and held for trial at the beginning of the November term of 1970. This is plainly wrong. While the court may have some discretion, it is rigidly limited by the constitutional securance of the fundamental right and its more precise specification found in *Code* 1931, 62-3-21, as amended. Speaking to this very point, this Court has previously held that:

> "The statute prescribes what shall be deemed unreasonable delay and thereby places the subject beyond the discretion of the court; it is mandatory, it says, for the neglect specified, the accused shall be forever discharged from prosecution for the offense charged against him." Miller, J., *Ex parte Chalfant, supra,* at page 96 of the West Virginia Report.

This principle is also reflected and applied in the holdings of the cases of *State ex rel. Wren v. Wood, supra; State ex rel. Parsons v. Cuppett, supra; Town of Star City v. Trovato,* 155 W.Va. 253, 183 S.E.2d 560 (1971); *State v. Underwood, supra;* see also, 21 AM. JUR. 2d *Criminal Law* § 241 (1965).

Viewed from any perspective, the result obtained by the majority opinion in this case is wrong. As the majority recognizes, the State is not protected in or saved from its failure to try Gary Erlewine promptly by reason of the statutory excuses; they were not applicable to the facts of this case. As demonstrated by the majority opinion writer's own reasoning in the *Brooks v. Boles* case, *supra,* it was not impossible to try the accused because he was available, inside, or within the reach of the court's jurisdiction at the beginning of the November term of 1970. Secondly, in any event, the principle applied in the *Smith & Brooks* case and the *Gregory* case is not applicable to the case at hand because here the accused had been held or remanded to a court of competent jurisdiction for trial. The limitation provided in the Three Term Statute began to run when he was held for trial. Three unexcused whole regular terms of court then passed without trial. Third,

the accused did not prevent trial by a motion for continuance or by his "fault" in instigating proceedings which delayed the trial. Fourth, factually, it was apparent that the delay occasioned was due to the fault of the prosecutor or the court in failing to enter an order until two months after a hearing had been concluded wherein the juvenile court had determined that Erlewine should be tried as an adult. In summary, there was no chargeable delay on the part of the accused, no impossibility, and there were no statutorily-excepted excuses interposed to prevent a prompt trial. When these possibilities are concluded, the trial court has no further discretion. The Constitutions and the statutes in aid thereof place an ineluctable burden upon the State to try an accused speedily or without unreasonable delay.

For these reasons I would have granted the writ of prohibition.